## In re Green et al.

*Albert G. Liddell, Jr.*, for petitioner.
*Sam R. Keller*, for Membra Moore.

RAHAUSER, J., July 19, 1955.—This case involves a petition to delete the return of marriage relating to the apparent marriage of Frank Green and Membra Moore from the records of this court.

Petitioner, Frank Green, testified that on January 13, 1936, he and Membra Moore applied for a marriage license. Membra Moore Green testified that the petitioner paid a stranger to pose as her father since she was then only 16 years old and parental consent to the marriage was required. Petitioner testified that after obtaining the marriage license, he completed the certificate of marriage which was designed for execution by the clergyman performing the marriage and signed the name of a nonexistent clergyman. Petitioner denied that he returned the certificate of marriage to the clerk of this court, but we do not believe his testimony in this respect.

The parties to the apparent marriage lived together and two children were born to them.

Subsequently, they separated and petitioner became a member of the United States Air Force. In 1952 or 1953, his apparent wife, Membra Moore Green, applied for an allotment as his wife and submitted a copy of the said marriage record in support of her claim. Petitioner avers that this was the first time that he knew of the existence of the marriage record which he now seeks to have canceled or deleted from the records, to use his language.

Counsel have not referred us to any authorities on this matter and our own research has not disclosed any case wherein the facts closely resemble those of the case at bar. A case having some of the elements of the present case is Pritchett v. Ellis, 201 Ga. 809, 41 S. E. 2d 402 (1947), decided by the Supreme Court of Georgia. In that case the petitioner alleged that a license was obtained by *defendant without the knowledge or consent of petitioner*, that petitioner's name was written in the papers and that the minister's name was forged to the marriage certificate and the papers were then returned to the ordinary (corresponding to the clerk of this court) for recording. Neither the ordinary nor the State Board of Health, to whom the ordinary made reports of marriages, was made a party to the proceeding to cancel the record of the marriage in the office of the ordinary. The court held that the petition was defective because of its failure to make the ordinary or the State Board of Health a party defendant.

The ordinary was subsequently made a party to the proceedings and the "subsequent trial resulted in a verdict for the plaintiff and a judgment decreeing that the Ordinary cancel the record of the marriage license and marriage certificate": Pritchett v. Ellis, 203 Ga. 1, 45 S. E. 2d 188 (1947).

In the instant case, the clerk of this court was not made a party, but he appeared and testified as to the

record; we do not believe that it was necessary to make the clerk of this court or the State Department of Health a party to this proceeding under such circumstances.

In Randazzo v. Roppolo, 105 N. Y. S. 481 (1906), the Supreme Court of New York at trial term in Kings County, on the petition of a man who had been impersonated by another in a marriage ceremony, *without his knowledge or consent*, declined to annul a false certificate of marriage but judically determined that petitioner was not married as stated in the false certificate and directed that a note to that effect be endorsed on the margin of the original certificate.

In Vanderbilt v. Mitchell et al., 72 N. J. Eq. 910, 67 Atl. 97, 14 L. R. A. N. S. 304, the New Jersey Court of Errors and Appeals directed the cancellation of a birth certificate falsely alleging that the petitioner was a father of the child whose birth was recorded. The court said that its decree "would not forever preclude a trial of the question of paternity. The effect of the decree would be to destroy the evidential character of this certificate, so that no one would be entitled thereafter to use it as evidence upon such issue".

The present case differs from the Vanderbilt case and the other cases previously cited herein in that the petitioner seeking the destruction of the alleged false record was himself responsible for its creation. The present proceeding is in the nature of an equity proceeding and is subject to the well-known maxim that he who comes into equity must come with clean hands.

In Lodati v. Lodati, 52 N. Y. S. 2d 119 (1944), a proceeding for an annulment of marriage, the court said, at page 120:

"The clean hands maxim requires that the plaintiff be denied affirmative relief under the circumstances herein. In behalf of the defendant he financed and procured the judgment of divorce from her former

husband. After the interlocutory judgment was entered and before it became final, with full knowledge of the facts, he induced the defendant to marry him for ulterior reasons relating to the Selective Training and Service Act, 50 U. S. C. A. Appendix, §301 et seq., knowing that she was not free then to marry. The maxim requires that he who has done inequity in respect of the subject matter of an action (here the marriage) may not have equity as a matter of affirmative exercise of power by a court of equity."

A Pennsylvania case, Baker v. Baker, 84 Pa. Superior Ct. 544 (1925), involved a petition to have a marriage declared null and void under the Act of April 14, 1859, P. L. 647, which afforded such relief to "an innocent or injured party".

The court declined the requested relief, saying, at page 545:

"A person who marries another knowing at the time that the latter has a husband or wife living is not an 'innocent or injured party' within the meaning of the act, and *while the law does not in such circumstances legalize the void marriage* (Thomas v. Thomas, 124 Pa. 646; Heffner v. Heffner, 23 Pa. 104; Klaas v. Klaas, 14 Pa. Superior Ct. 550), *it refuses its aid to one, who, having knowingly contracted such a marriage, later seeks a formal decree of nullification. In such case, it leaves* the parties as it finds them." (Italics supplied.)

The record of the marriage in the office of the clerk of this court is only prima facie evidence of the marriage: Act of June 23, 1885, P. L. 146, sec. 6, 48 PS §9. See, also, Act of August 22, 1953, P. L. 1344, sec. 20, 48 PS §1-20. The evidentiary value of the record should not be destroyed on the petition of the wrongdoer. It should be left in its present status, to be considered with other evidence in connection with any proceeding wherein the relationship of the petitioner and Membra Moore Green is to be determined.

See York Ice Machinery Corp., Appellant, v. Kearney, 344 Pa. 659, 664 (1942).

The petition to delete the return of marriage from the records of the clerk of this court will be dismissed.